**In re David A. CRABTREE, Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 2, 1983.

Morton, Lewis, King & Krieg, George Morton, John King, Mary Farmer, Knoxville, Tenn., for FDIC.

Robertson, Williams, Ingram, Faulkner & Overbey, J. Douglas Overbey, Knoxville, Tenn., for First Peoples Bank.

Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Craig J. Donaldson, Knoxville, Tenn., for First Tennessee Bank.

Wilson S. Ritchie, P.C., Wilson S. Ritchie, Stephen R. Wise, Knoxville, Tenn., for debtor.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

I

On July 14, 1983, an involuntary chapter 7 bankruptcy proceeding, 11 U.S.C.A. § 303 (1979), was commenced against the debtor by three petitioning creditors (First Tennessee Bank of Knoxville, First Peoples Bank of Washington County, and the Federal Deposit Insurance Corporation). On August 2, 1983, the Federal Deposit Insurance Corporation (FDIC) filed a motion to amend, asserting it holds numerous notes either executed or guaranteed by the debtor in addition to the note described in the original petition; further, FDIC explained the source of the claims it holds in its corporate capacity.[1]

A motion to substitute FDIC in its receivership capacity for First Peoples Bank of Washington County was also filed on August 2, 1983. The motion recites in material part that the Commissioner of the Department of Banking for the State of Tennessee, on or about July 29, 1983, determined that First Peoples Bank was insolvent; that the Commissioner ordered the closure of the Bank; and that appointment

---

1. On May 27, 1983, pursuant to the provisions of 12 U.S.C.A. § 1821(e) (1980), FDIC was appointed receiver of City & County Bank of Anderson County, City & County Bank of Knox County, and City & County Bank of Roane County. Pursuant to 12 U.S.C.A. § 1823(c)(2)(A) and (d) (Supp.1983), FDIC in its corporate capacity acquired the claims of the insolvent banks against the debtor through an intra-FDIC sale.

as receiver of the Bank was tendered to and accepted by FDIC.[2]

In his answer, filed August 11, 1983, the debtor asserted a variety of defenses. The defenses remaining after trial on August 22, 1983, are: (1) FDIC in its corporate capacity violated the requirement of former Bankruptcy Rule 104(d) that a petitioning creditor holding a transferred claim must furnish a statement setting forth the consideration for the transfer;[3] (2) neither First Peoples Bank nor FDIC as receiver for the Bank holds any claim against him; (3) since FDIC is a single entity for the purposes of 11 U.S.C.A. § 303(b)(1) (1979), despite its dual capacities (liquidator and receiver), there are only two petitioning creditors; and (4) First Tennessee Bank does not hold any claim against him since it is merely a collecting agent, hence ineligible to qualify as a petitioning creditor. The debtor, however, admits that he is generally not paying his debts as they become due, 11 U.S.C.A. § 303(h)(1) (1979).

At trial, David Lewis, an FDIC account officer, testified that he is the officer in charge of the debtor's notes held by FDIC in its corporate capacity. According to Lewis, FDIC in its corporate capacity is the holder of nine promissory notes either executed or guaranteed by the debtor. The total unpaid balance on these notes is $5,466,752.17.[4] Lewis further testified that more than $5,000.00 of this indebtedness is unsecured.

Anthony Gervolino, an FDIC liquidator at large, testified that he is currently assigned to the FDIC receivership of First Peoples Bank. Gervolino testified that FDIC as receiver of First Peoples Bank

holds a $100,000.00 promissory note (Ex. 2) dated November 22, 1982, from West Knoxville Investment Co., Inc. (WKIC); that payment of the note is guaranteed by the debtor by virtue of an unlimited continuing guaranty dated June 25, 1979; that there is no collateral securing the indebtedness, and that the indebtedness is in default in an unpaid principal amount of $100,000.00, plus interest in the amount of $5,736.98 accrued through July 25, 1983.

On behalf of First Tennessee Bank of Knoxville, Robert E. Turner, a senior vice-president, testified that the Bank holds five notes executed by the debtor in his personal capacity, as well as the debtor's continuing guaranties (Exs. 11 and 12) of indebtedness owing both by Metro Aviation, Inc. and WKIC. The debtor's guaranty of Metro Aviation indebtedness is unlimited; his guaranty of the WKIC indebtedness is limited to $5,000,000.00. According to Turner's testimony, the unpaid principal balance on the debtor's five personal notes is $1,121,964.61. These five notes are cross-collateralized, but Turner does not know the value of the collateral, which consists of shares of stock in four separate corporations and an insolvent bank.[5] Turner further testified that the indebtedness of Metro Aviation to the Bank is $645,000.00 principal, plus $98,373.64 interest, and that the indebtedness is unsecured. It is also Turner's testimony that WKIC is indebted to First Tennessee Bank in the amount of $8,873,979.67 principal, plus $848,822.28 interest accrued through June 30, 1983. The only security for the WKIC indebtedness aside from the

---

**2.** Orders granting the amendatory and substitutionary FDIC motions were entered previous to the filing of the debtor's answer.

**3.** This requirement has been carried forward in the new Bankruptcy Rules, effective August 1, 1983. See Bankruptcy Rule 1003(c).

**4.** See Coll.Ex. 1. The recapitulation sheet summarizing the indebtedness on the nine notes was prepared by Deborah Boone, an assistant FDIC examiner, who also testified at the trial.

**5.** The collateral for the loans consists of:

(a) 6000 shares in City and County Bank of Roane County, an insolvent Bank
(b) 400 shares in Industcorp, Inc.
(c) 1100 shares in Atrium, Inc.
(d) 57 shares in Bill Fogarty's Inc.
(e) 10,000 shares in Fogarty's Shoes, Inc.
First Tennessee Bank, however, apparently does not have a perfected security interest in either the C & C Bank shares or the shares in IndustCorp, Inc., since it does not have possession of any instruments representing those shares. See Tenn.Code Ann. § 47–9–305 (1979).

debtor's continuing guaranty consists of shares in three former banks.[6]

Turner further testified that the debtor's individual notes were "charged off"[7] by the First Tennessee Bank after a review in June 1983. The Bank has also "charged off" $8,814,977.71 of the WKIC indebtedness. An identical amount, however, has been received by the Bank from FDIC, pursuant to the terms of an agreement between them. According to Turner, however, the First Tennessee Bank still holds an unpaid WKIC indebtedness in the principal amount of $59,001.96, in addition to the Metro Aviation indebtedness of more than $645,000.00. Furthermore, Turner testified that the Bank holds additional claims based on obligations of the debtor satisfied by FDIC because the Bank, pursuant to an agreement with FDIC, is entitled to 40% of any amount collected from the debtor and appropriated against his obligations previously paid by FDIC.

## II

Bankruptcy Code § 303(b) enacts in relevant part:

An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 . . . of this title—

(1) by three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability . . . if such claims aggregate at least $5,000.00 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

. . . .

Based on the uncontradicted testimony adduced at trial, the court finds that:

(1) FDIC in its corporate capacity holds a noncontingent claim against the debtor which is either unsecured or undersecured in an amount in excess of $5,000.00.

(2) On the date of the filing of the involuntary petition, the First Peoples Bank held a noncontingent, unsecured claim against the debtor in the amount of $100,000.00 principal, plus interest.

(3) FDIC, as receiver of First Peoples Bank, now holds a noncontingent, unsecured claim against the debtor in the principal amount of $100,000.00, plus $5,736.98 interest accrued through July 25, 1983.

(4) First Tennessee Bank holds noncontingent claims against the debtor, including an indebtedness of Metro Aviation, Inc. in the amount of $645,000.00 principal, plus $98,373.64 interest, accrued through June 30, 1983, and an indebtedness of WKIC in the unpaid principal amount of $59,001.96, both of which are guaranteed by the debtor.

■ According to Collier, "Secured creditors may act as petitioning creditors if they intentionally waive their security . . . or if the other petitioning creditors' claims aggregate at least $5,000.00 over the value of any lien as provided for in § 303(b)(1)." 2 *Collier on Bankruptcy* ¶ 303.08[5] (15th ed. 1982). Consequently, even assuming arguendo that the claim of First Tennessee Bank is fully secured,[8] the Bank nonetheless qualifies as a petitioning creditor under Code § 303(b)(1).

■ The only remaining question is whether FDIC may qualify as two separate entities for the purpose of Code § 303(b)(1).[9] The court believes this issue

6. The three banks are City and County Bank of Knox County, United Southern Bank of Nashville, and United American Bank of Washington County. The first two banks failed, and the third is a predecessor of First Peoples Bank of Washington County which also failed.

7. The "charge off" did not extinguish or diminish the liability of the debtor to the Bank. It is merely an "in-house" bookkeeping procedure.

8. The debtor's attorney asserted that the Metro Aviation indebtedness to First Tennessee Bank is secured by virtue of the cross-collateralization provisions of the notes executed by the debtor in his individual capacity and held by the Bank. It is unnecessary for the court to determine whether this assertion is correct, considering the court's interpretation of 11 U.S.C.A. § 303(b)(1) (1979).

9. Contrary to the debtor's assertion, FDIC in its corporate capacity did comply with the applicable Bankruptcy Rule by providing copies of documents reflecting the consideration for the

must be resolved in the affirmative. On the filing date, July 14, 1983, there were three qualified petitioning creditors.[10] In its receivership capacity FDIC is in effect an involuntary transferee of the claim of First Peoples Bank, one of those petitioning creditors.[11] Further, there is authority for the proposition that FDIC in its receivership capacity is a distinct entity from FDIC in its corporate capacity. See *Fed. Deposit Ins. Corp. v. Design & Dev. Inc.,* 73 F.R.D. 442 (E.D.Wis.1977). The question whether FDIC may in a single case be a petitioning creditor in its corporate capacity and a separate petitioning creditor in its receivership capacity was fully discussed in the involuntary case in this court of *In re Butcher,* 32 B.R. 572 (Bkrtcy.E.D.Tenn.1983).

The requirements of 11 U.S.C.A. § 303(b)(1) (1979) have been met. The debtor admits that he is generally not paying his debts as they become due. The petitioning creditors, therefore, are entitled to an order for relief.

This Memorandum constitutes findings of fact and conclusions of law required by Bankruptcy Rule 7052.

transfer of the claims it holds against the debtor. See contracts of sale filed as exhibits to the "Creditor's Petition to Amend its Assertions in the Involuntary Chapter 7 Bankruptcy," filed by FDIC on August 2, 1982.

10. As a general rule, the filing date is the controlling date for the purpose of determining whether an involuntary petition has been filed by the requisite number of entities. *Matter of Claxton,* 21 B.R. 905, 908 (Bkrtcy.E.D.Va.1982).

11. See 12 U.S.C.A. § 1821(e) (1980).