**PARADISE HOTEL CORPORATION**
**d/b/a Pineapple Beach**
**Resort, Appellant**

v.

**BANK OF NOVA SCOTIA.**

No. 87–3318.

United States Court of Appeals,
Third Circuit.

Argued Dec. 10, 1987.
Decided March 15, 1988.

Jewel Cooper, Cooper & Diase, St. Thomas, U.S.V.I., Elisabeth R. Sauer (argued), Campbell, Morgan, Gibson & Kramer, Kansas City, Mo., for appellant.

William L. Blum, Lloyd De Vos (argued), Andrew W. Heymann, De Vos & Co., Charlotte Amalie, St. Thomas U.S.V.I., for appellee.

Before GIBBONS, Chief Judge, STAPLETON, and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal requires us to determine whether a fully secured creditor may participate in the filing of an involuntary bankruptcy petition. We must also decide whether the debtor in this case is foreclosed by its response to the involuntary petition from now asserting claims based on alleged wrongdoing on the part of the secured creditor in the filing of that petition. Finally, we address the issue of whether the complaint states claims upon which relief can be granted.

The district court held that the Bank of Nova Scotia (Bank), although fully secured, could participate as a petitioning creditor in a Chapter 7 proceeding involving Paradise Hotel Corporation (Paradise). It also concluded that Paradise was now barred from asserting that the Bank acted tortiously in causing the involuntary petition to be filed. We agree that the Bank was a proper petitioning creditor. Because we disagree with the court's latter conclusion, however, we will reverse.

## I.

Paradise operated a resort hotel in St. Thomas, United States Virgin Islands. The resort venture was financed largely by two loans provided by the Bank that were secured by a mortgage on the hotel's real estate. On January 20, 1984, the Bank terminated negotiations with Paradise concerning repayment schedules for the loans and joined two other Paradise creditors in filing an involuntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. (1982 & Supp.1986). Accord-

ing to Paradise, this filing immediately created a crisis in relations between Paradise and its other creditors, resulted in conditions under which Paradise could not meet the demands of its creditors on a current basis, and left Paradise with no alternative but to file a voluntary petition under Chapter 11, 11 U.S.C. § 1101 et seq. (1982 & Supp.1986) on January 26, 1984.

On February 13, 1984, Paradise requested that the bankruptcy court stay the involuntary bankruptcy proceeding initiated by the Bank. Paradise insisted that the Bank had caused the involuntary petition to be filed wrongfully because the Bank, as a fully secured creditor, was not entitled to be a petitioner under § 303 and because Paradise was paying its debts as they became due as of the date of the filing of the involuntary petition. Paradise's "Memorandum in Support of Debtor's Motion to Stay Involuntary Petition" made clear that Paradise's primary motivation in seeking the stay was to preserve potential claims arising out of the filing of the petition so that it might pursue these claims after determining how much damage had been occasioned by the filing:

> Debtor requests relief of stay rather than dismissal in the present case.... From the following arguments, it may be noted that the filing of the involuntary petition may have been patently improper and, as such, may have given rise to unwarranted damage to debtor which only voluntary relief will allow debtor an opportunity to determine. If in fact debtor has suffered from the wrongful filing of this involuntary petition, debtor would request leave to bring an adversary proceeding in which affirmative relief against the petitioners may be obtained.

App. at 12–13. The Memorandum then set forth Paradise's reasons for contending that the filing had been wrongful. The stay was granted by the bankruptcy court.[1]

---

1. The record in this case does not include a copy of the stay order. It does, however, contain a judicial admission by the Bank before the district court that such an order exists. App. at 36.

With the stay of the Chapter 7 proceeding in place, the Chapter 11 proceeding went forward over the next two years. During that time, neither party asked the bankruptcy court to lift the stay, or to dismiss or convert the Chapter 7 action. Paradise ultimately sold its properties and paid each of its creditors in full.

Shortly after completion of the Chapter 11 proceeding, Paradise brought this suit in the district court. In its complaint, Paradise elaborated on the allegations of its "Memorandum in Support of Debtor's Motion to Stay Involuntary Petition." Paradise alleged that the Bank "maliciously and without reasonable grounds instigated and participated ... in the filing" of what it knew was an improper involuntary petition. App. at 22. Paradise again insisted, as it had in the earlier Memorandum, that the impropriety lay both in the fact that the Bank, as a fully secured creditor, was not an appropriate petitioning creditor and in the fact that Paradise had generally been paying its debts as they arose. By wrongfully filing such a petition, Paradise maintained, the Bank had engaged in (1) malicious prosecution, (2) abuse of process, (3) racketeering, (4) false representation, (5) intentional interference with business relationships, and (6) breach of trust. Paradise alleged that it had suffered damages and incurred legal expenses totalling more than $10,000 as a result of the Bank's actions, and that an award in excess of $1,000,000 in punitive damages would be appropriate.

In response to the complaint, the Bank filed a motion to dismiss for failure to state a claim. Treating the motion as a request for summary judgment, the district court concluded that the Bank was entitled to participate in the Chapter 7 filing, despite its fully secured status, and that Paradise's Chapter 11 petition constituted an admission that it was generally unable to pay its debts as they became due. The district court also held that the failure of Paradise

"to contest the validity of the involuntary petition [constituted] waiver of its right to object to any defect in the filing of [the] petition." App. at 118.

Our review of the district court's determinations is plenary. We review the grant of summary judgment as though considering the controversy in the first instance. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## II.

█ The district court concluded initially that the Bank, although concededly a fully secured creditor, could properly join an involuntary bankruptcy petition. While there is a dearth of authority on the point, we agree with the district court's conclusion.[2]

Section 303(b)(1) provides in relevant part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under Chapter 7 ... of this title—

(1) by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, ... if such claims aggregate at least $5000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

Read literally, this section requires only that a petitioner be an entity which holds a non-contingent, undisputed claim against the debtor. Its description of the qualification of a petitioner is, therefore, broad enough to include a fully secured holder of a non-contingent, undisputed claim. Moreover, the last clause of the section makes it clear that at least some creditors holding security may be included in the group of

---

**2.** *In re Crabtree,* 32 B.R. 837 (Bankr.E.D.Tenn. 1983) appears to be the only reported case in which a court was required to address this issue. It held that a fully secured creditor could be a § 303(b)(1) petitioner. 32 B.R. at 839. Treatise writers have taken the same view. 2 *Collier on Bankruptcy* ¶ 303.08[5] (15th ed. 1986); G. Treister, J. Trost, L. Forman, K. Klee, and R. Levin, *Fundamentals of Bankruptcy Law* § 3.02(c)(1) (1986); *See also* 2 D. Cowans, *Bankruptcy Law and Practice* § 14.5 (1987).

three petitioners so long as the unsecured portion of the petitioners' claims totals in the aggregate at least $5,000. Since that clause does not distinguish between fully secured and undersecured creditors, § 303(b)(1) on its face purports to authorize the filing of an involuntary petition where, as here, a fully secured creditor is joined by two unsecured creditors whose claims exceed $5,000 in the aggregate.

We acknowledge that there is some appeal to Paradise's argument that a creditor whose claim is not in jeopardy should play no role in initiating an involuntary bankruptcy. Nevertheless, we conclude that we should apply the statute as written without engrafting upon it an implied exception. First, we have been unable to find any support for such an exception in the legislative history. Second, the fact that the text of the statute is broad enough to include secured creditors appears unlikely to have been the product of oversight. Section 303 is a revision of § 59, 11 U.S.C. § 95 (1976) (superceded), of the Bankruptcy Act of 1898. Section 59 required only one petitioner when the debtor had less than twelve creditors and expressly provided that "fully secured creditors" not be counted in the tally of creditors. *See* § 59(e)(4). Section 303 retains the distinction between situations in which there are less than twelve creditors and those in which there are twelve or more, but deletes the reference to "fully secured creditors." In this context, we are confident that the drafters of § 303 consciously focused on the issue now before us when they penned the broad language specifying those who may petition.

Finally, we note that under any reading of § 303(b)(1), a secured creditor that is unsecured by only a small amount can clearly help precipitate a bankruptcy. This is significant for two reasons. Any reading that required the bankruptcy court to distinguish between fully secured and slightly unsecured creditors would add complexity to the administration of § 303(b)(1) without accomplishing any substantial objective and, as a practical matter, our reading of that section does not deprive a debtor of any substantial protection he would otherwise have. Accordingly, we will affirm the district court's determination that the Bank's fully secured status did not preclude it from joining the involuntary petition.

### III.

■ As an additional ground for its entry of summary judgment for the Bank, the district court stated that Paradise "admitted its bankrupt condition when it filed a verified complaint which asserted entitlement to relief under [Chapter 11]." App. at 118. As a result, the court concluded that Paradise was in no position to contend that it had been paying its debts as they came due as of the time of the Chapter 7 petition.

Because the filing of a voluntary petition constitutes an adjudication of bankruptcy effective on the filing date,[3] such a filing may preclude a debtor from contending thereafter that it was generally paying its debts at the time of the petition. Paradise, however, does not claim to have been paying its debts on January 26, when it invoked Chapter 11. Paradise's complaint focuses on January 20, 1984, the date of the Bank's involuntary petition.[4] The complaint alleges that until January 20 Paradise had been paying its debts and that the involuntary petition destroyed its ability to do so in less than a week. Contrary to the view of the district court, the non-existence of insolvency on January 20th and its exist-

---

**3.** Section 301 states that "commencement of a voluntary case ... constitutes an order for relief." As with § 18(f) of the 1898 Act, a debtor is thereby deemed to have been bankrupt from the time it filed the voluntary petition. *See* House Report No. 95–595, 95th Cong. 1st Sess. 321 (1977); Senate Report No. 95–989, 95th Cong. 2d Sess. 31 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (suggesting that use of the phrase "order for relief" rather than "adjudication" merely reflects a desire to adopt less pejorative language).

**4.** Pursuant to § 303(h), the order of relief, or adjudication of bankruptcy, in a Chapter 7 case occurs only after the petition is not timely controverted or withstands the debtor's objections. Thus, no adjudication took place on January 20, 1984.

ence on January 26th are not logically inconsistent propositions. The filing of an involuntary petition frequently creates a situation in which potential sources of additional credit disappear and existing debts are accelerated.[5] Accordingly, we conclude that the district court was mistaken in assuming that an adjudication of bankruptcy on January 26 necessarily meant that Paradise had ceased paying its debts as they came due on January 20.[6]

At oral argument before us, counsel for the Bank took a different tack for the first time. Counsel argued that, even if Paradise's Chapter 11 petition did not foreclose its claims, the record contains sufficient evidence for a factual determination that Paradise was not paying its debts on January 20, 1984. We decline to consider this contention. The Bank neither pursued this argument in the district court, nor raised it in its brief on appeal. Moreover, the record does not contain appreciable evidence as to claims by creditors other than the Bank. We are not prepared to conclude from the limited information before us that this is one of those infrequent occasions when evidence as to a single debt demonstrates conclusively that the debtor was not generally paying its debts as they came due.[7] Given the fact that the Bank did not press this argument in support of its motion for summary judgment, we cannot fault Paradise for failing to further develop the record in this area.

## IV.

The third ground for the district court's decision was that Paradise had waived its bad faith claims against the Bank by failing to contest the Chapter 7 petition. The Bank advances both this waiver argument and two closely related contentions: (1) that the Chapter 7 proceeding should be given *res judicata* effect, and (2) that the remedy provided by § 303(i)(2) of the Code against petitioners who have filed in bad faith is an exclusive one. We find all three arguments unpersuasive.

■ First, we note that waiver, in the strict sense, is the intentional relinquishment of a known right. *See, e.g., Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3d Cir.1987). Nothing that Paradise did or did not do in response to the Chapter 7 petition could constitute a waiver of this kind given the fact that its Memorandum expressly evidenced an intent to pursue its bad faith claims.

Moreover, it is simply not true that Paradise failed to raise in opposition to the Chapter 7 petition the defects that it now identifies in that petition. An involuntary petition is an application for an order of relief declaring the debtor to be a bankrupt. When the petition is filed, the debtor must be served with a summons requiring within 20 days of its service a response as to why an order for relief should not be entered. Rule 1010. In this instance, Paradise filed an apparently timely response specifying the defects it perceived in the petition and asking that the proceeding be stayed.[8] As the Advisory Committee's Note to Rule 1013 recognizes, one of the

5. Paradise contends, for example, that the involuntary petition caused the Internal Revenue Service to abandon its agreement to permit Paradise to pay its tax liability in installments.

6. Our conclusion here mandates rejection of an analogous argument made by the Bank. The Bank insists that Paradise's Chapter 11 petition effected a conversion of the Chapter 7 proceedings, thus giving rise to an "order of relief" that precluded Paradise's claim generally to have been paying its debts on January 20. Once again, the Bank ignores the fact that the date attributed to the "order for relief" would be January 26, six days after the relevant date.

7. Several courts have concluded that proof that a debtor failed to service a single debt may suffice to demonstrate that the debtor is not paying its debts as they come due, *See e.g., In re Hill*, 5 B.R. 79, 83 (Bankr.D.Minn.1980); *Matter of B.D. Intern. Discount Corp.*, 15 B.R. 755, 762–63 (Bankr.S.D.N.Y.1981); but such a conclusion generally is deemed appropriate only under truly extraordinary circumstances. *See Matter of 7H Land & Cattle*, 6 B.R. 29 (Bankr.D.Nev. 1980); *In re Sol Arker*, 6 B.R. 632, 636 (Bankr.E. D.N.Y.1980); *See also* 2 Collier, *Collier on Bankruptcy* ¶ 303.12[4] (15th ed. 1986).

8. The Bankruptcy Court treated Paradise's response as timely and nothing in the record suggests that it was not filed within 20 days of the service of the summons. Contrary to the contention of the Bank there is no requirement that the response be filed within 20 days of the filing of the petition.

alternatives open to the court after the filing of a response is to exercise its inherent authority to stay the proceeding. The court exercised that option in the Chapter 7 proceeding in this case and no one has since sought to have the stay lifted. As a result, Paradise has not been called upon to take any further position with respect to the petition and the petition has never been acted upon by the court.

Thus, this is not a case like those relied upon by the Bank in which the debtor has been called upon to take a position with respect to the merits of an involuntary petition, has failed to oppose it or has opposed it on less than all of the available grounds, and has suffered an adverse adjudication of the petition. *See, e.g., In re Mason,* 709 F.2d 1313 (9th Cir.1983); *In re Earl's Tire Service,* 6 B.R. 1019 (D.Del. 1980). In those cases, the debtor, like any other party to civil litigation, is barred by the adverse adjudication from asserting that the petition is defective. Here, there was no adjudication adverse to Paradise. We have nothing but a proceeding that was stayed prior to the time when the bankruptcy court would have required Paradise to go forward with an attack on the petition or suffer a declaration of bankruptcy. Accordingly, there was *no basis for the district court's conclusion that Paradise waived its claims.*

The absence of an adverse adjudication, of course, is also fatal to the Bank's contention that the Chapter 7 proceeding should be given *res judicata* effect.

■ The Bank further insists that Paradise forfeited its claims by deciding not to proceed under § 303(i)(2) of the Code. That section provides as follows:

(i) If the court dismisses a petition under [Chapter 7] other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

\* \* \* \* \* \*

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

We agree that this section was intended to permit a bankruptcy court to adjudicate claims in a Chapter 7 proceeding like those of Paradise. It does not require that all such claims be so adjudicated, however, and we know of no case which so holds. Moreover, we believe it would be inconsistent with the overall scheme of the Code to find that § 303(i)(2) is an exclusive remedy for such claims.

Under § 706 of the Code a debtor, with exceptions not here relevant, is entitled as of right to convert a Chapter 7 proceeding to a Chapter 11 proceeding at any time. Frequently, it is in the debtor's best interest to convert without delay and commence its reorganization as promptly as possible. If we were to accept the Bank's arguments regarding the exclusivity of § 303(i)(2), we would place a debtor in this situation on the horns of a dilemma by requiring it to choose between two unattractive alternatives. One alternative would be to pay the price of indefinitely postponing the conversion in order to litigate the legal sufficiency of the petition, the bad faith of the petition, and the amount of its damages in the Chapter 7 case. The other alternative would be to convert immediately in order to secure the Chapter 11 advantages the debtor was intended to have but thereby release its claims against the petitioner who allegedly petitioned in bad faith. We think Congress did not intend that a debtor should have to pay this kind of penalty for exercising its statutory right to convert promptly. Accordingly, we decline to hold that § 303(i)(2) is an exclusive remedy in a situation of this kind.

For these reasons, we cannot agree that Paradise's response to the Chapter 7 petition forecloses its claims in this action.[9]

---

9. At oral argument, the Bank suggested for the first time that Paradise was foreclosed from litigating its claims because it failed to raise them in its Chapter 11 proceeding. The record in this proceeding does not reveal what role, if any, these claims played in the Chapter 11 proceeding and we are not in a position to express an opinion with respect to this issue. We have

## V.

Because we conclude that Paradise remains free to contend that it was generally paying its debts as they became due as of January 20, 1986, that the Bank had no reason to believe otherwise, and that the Bank maliciously represented to the contrary in its Chapter 7 petition, we must remand for further proceedings. We consider it appropriate, however, to narrow the field of battle before doing so.

With respect to Paradise's claims for malicious prosecution, abuse of process, false representation and intentional interference with business relationships, we are unable to say that "it appears beyond doubt that [Paradise] can prove no set of facts in support [of its claims] which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). It seems apparent from the present record, however, that Paradise can have no meritorious RICO or breach of trust claims.

 To make out a civil RICO claim under 18 U.S.C. § 1962(c) and (d) (1982 & 1986 Supp.), a complaint must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Marshall–Silver Construction Co., Inc. v. Mendel*, 835 F.2d 63, 65 (3d Cir.1987), citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285–86, 87 L.Ed. 2d 346 (1985). Paradise contends that the Bank itself was "the enterprise" and that the Bank's behavior immediately before and in connection with the involuntary bankruptcy petition constituted a pattern of racketeering activity. App. at 25. A single entity cannot be both defendant and the enterprise for purposes of § 1962(c), however. *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 634 (3d Cir.1984). Moreover, Paradise's allegation that during the ninety days preceding bankruptcy Paradise and the Bank engaged in negotiations with respect to the Bank's loan, and that the Bank filed its petition, without notice, in disavowal of these negotiations, simply

does not describe a pattern of racketeering activity by the Bank of the sort contemplated by § 1962. That a "pattern of racketeering activity" requires more is evident from our recent decision in *Marshall–Silver Construction Co., Inc. v. Mendel*, 835 F.2d 63 (3d Cir.1987). We there held, on very similar facts, that proof of only a single injury, a single victim, and a single short-lived scheme did not suffice to satisfy the pattern requirement.

In connection with its breach of trust claim, Paradise contends that the Bank, by seeking involuntary bankruptcy, breached a fiduciary duty stemming from the relationship that had developed between the parties during the pre-bankruptcy negotiations with respect to the loan. Creditor-debtor relationships such as that between the Bank and Paradise rarely are found to give rise to a fiduciary duty. *See, e.g., Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir.1984) (interpreting New York law). It ordinarily "would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table." *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). Paradise's complaint alleges nothing that could give rise to a fiduciary duty on the part of the Bank here. This claim, as well as the RICO claim, should, therefore, be dismissed on remand.

## VI.

For the foregoing reasons, we will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

---

consistently held that a matter should first be raised before the district court in part because of the need to develop an adequate record. In

this instance, that rationale demonstrates clearly the necessity for the rule.