**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CAROLE D. KING,<br>            Debtor. | BAP No. CC-24-1008-LFS |
| WOLVERINE ENDEAVORS VIII, LLC,<br>          Appellant,<br>v.<br>EAST WEST BANK; INSURANCE<br>COMPANY OF THE WEST; FENCE<br>FACTORY, INC.; JOHN E. KING;<br>CAROLE D. KING,<br>          Appellees. | Bk. No. 9:22-bk-10673-RC<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Ronald A. Clifford, Bankruptcy Judge, Presiding

APPEARANCES

Myron Moskovitz argued for appellant; Herb Fox argued for appellee
Carole D. King.

Before: LAFFERTY, FARIS, and SPRAKER, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

## INTRODUCTION

Wolverine Endeavors VIII, LLC ("Wolverine") appeals the bankruptcy court's order dismissing the involuntary chapter 7[1] petition it filed against Carole D. King.

Section 303(b) provides stringent requirements for creditors that seek to file an involuntary petition against an alleged debtor. The strict statutory scheme provides that, where an alleged debtor has 12 or more creditors with claims that fit the specific requirements of § 303(b), at least three petitioning creditors are required to commence an involuntary case against the alleged debtor. Where there are fewer than 12 such eligible creditors, the statute requires only one qualifying petitioning creditor.

The bankruptcy court held that only two of the creditors that signed an involuntary petition against Ms. King qualified as petitioning creditors under § 303(b). On appeal, Wolverine does not challenge that conclusion. However, the bankruptcy court also concluded that Ms. King had more than 12 countable creditors, such that three petitioning creditors were required to maintain the viability of the involuntary petition. As relevant to this appeal, the bankruptcy court included fully secured creditors in its count. Wolverine contends the inclusion of fully secured nonrecourse creditors was error.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

Although the Panel could not find, and the parties have not presented, any controlling authorities regarding this issue, a plain reading of § 303 and relevant legislative history compel us to follow a majority of out-of-circuit decisions and hold that fully secured, nonrecourse creditors are countable creditors for purposes of § 303(b).

We AFFIRM. We publish because this appeal presents a matter of first impression in this circuit.

## FACTS[2]

On August 31, 2022, Wolverine, as the sole petitioning creditor, filed an involuntary chapter 7 petition against Ms. King.[3] Wolverine asserted that it had a claim of $7,077,693.78 against Ms. King stemming from a judgment entered in 2011 and renewed in 2021.

Ms. King filed a motion to dismiss the involuntary petition. As relevant to this appeal, Ms. King argued that she had at least 12 countable creditors under § 303(b), thus triggering the portion of that statute requiring at least three petitioning creditors.

Subsequently, Insurance Company of the West ("ICW"), Fence Factory, Inc. ("Fence Factory"), and East West Bank filed joinders to the

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Concurrently, Wolverine filed a separate involuntary chapter 7 petition against Ms. King's husband, John E. King.

involuntary petition.[4] Thereafter, Ms. King challenged the qualifications of certain creditors that joined the petition. The court eventually set an evidentiary hearing to adjudicate the issues raised in the motion to dismiss.

Afterwards, the court entered an order dismissing the involuntary petition against Ms. King. The parties agreed that Wolverine and ICW qualified as petitioning creditors; however, the bankruptcy court agreed with Ms. King that neither Fence Factory nor East West Bank were eligible to join the petition under § 303(c). Having reduced the number of petitioning creditors to two, the bankruptcy court examined how many countable creditors Ms. King had.

The bankruptcy court concluded that Ms. King had 12 or more countable creditors. As relevant to this appeal, the court included three fully secured creditors in its calculation, bringing the total countable creditors to 13. As a result, pursuant to the numerosity requirements of § 303(b), the bankruptcy court dismissed the involuntary petition. Wolverine timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction over the bankruptcy court's determination under 28 U.S.C. § 158.

---

[4] Months later, Fence Factory filed a withdrawal of its joinder to the involuntary petition.

## ISSUE

Are fully secured, nonrecourse creditors counted for purposes of determining the number of an alleged debtor's creditors under § 303(b)?

## STANDARD OF REVIEW

This appeal presents a pure question of law and no factual issues have been presented to the Panel. We review a purely legal issue under a de novo standard. *Gerwer v. Salzman (In re Gerwer)*, 253 B.R. 66, 69-70 (9th Cir. BAP 2000) (citing *AT&T Universal Card Servs. v. Black (In re Black)*, 222 B.R. 896, 899 (9th Cir. BAP 1998)).

## DISCUSSION

Wolverine appeals only one portion of the bankruptcy court's order dismissing the involuntary petition against Ms. King, namely, the bankruptcy court's conclusion that fully secured creditors are counted for purposes of determining numerosity under § 303(b). Primarily referencing two unpublished and out-of-circuit decisions, Wolverine asserts that fully secured creditors that may pursue collateral for satisfaction of the debts owed to them should not be counted as "holders" under § 303(b).

We disagree. As we discuss in section A, the plain language of § 303 does not exclude such creditors as countable "holders" of a claim. In addition, as we discuss in section B, legislative history and policy further bolster our conclusion that Congress did not intend that fully secured creditors be omitted as countable creditors under § 303(b).

**A.  The plain language of § 303(b) does not exclude fully secured, nonrecourse creditors from qualifying as countable creditors.**

"[I]nterpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (internal quotation marks omitted). Pursuant to § 303(b), an involuntary petition may be filed:

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $18,600 . . . more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $18,600 . . . of such claims[.]

§ 303(b)(1)-(2). Section 303(b) defines which entities qualify as "holders" for two different purposes: (i) to determine which entities may initiate or join an involuntary petition as a petitioning creditor; and (ii) to calculate the number of eligible creditors[5] for the purpose of ascertaining the required number of petitioning creditors to file an involuntary petition. Section 303(b) does not explicitly differentiate between petitioning creditors and

---

[5] To distinguish entities that are petitioning creditors from entities that are being counted to satisfy the numerosity requirement of § 303(b), moving forward, we refer to the former as "petitioning creditors" and the latter as "countable creditors."

countable creditors; instead, the statute simply requires that both types of entities must qualify as "holders." As such, and notwithstanding Wolverine's argument to the contrary, cases interpreting which entities are eligible as "holders" under § 303(b) are as relevant to the eligibility of countable creditors as they are to the eligibility of petitioning creditors.

As is evident from the quoted statute above, § 303(b) is explicit and specific about which entities qualify as countable creditors. The statute excludes entities with claims that are contingent or the subject of a bona fide dispute as to liability or amount, employees or insiders of the alleged debtor, and any transferee of transfers voidable under certain sections of the Code. In addition, the statute requires that qualifying entities hold claims that "**aggregate** at least $18,600 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." § 303(b)(1) (emphasis added).

Although the statute makes clear that fully secured creditors would not qualify as the **sole** petitioning creditor because they would not hold claims that "aggregate at least $18,600 more than the value of any lien on property of the debtor," § 303(b) does not otherwise expressly prevent fully secured creditors from qualifying as either a petitioning creditor or a countable creditor. This exclusion does not appear to be an oversight; it is evident from § 303 that Congress explicitly excluded secured creditors when it intended to. *See* § 303(c) (providing that only unsecured creditors may join an involuntary petition).

Given the specificity of exclusions in § 303, the fact that the statute is silent with respect to fully secured creditors is reason enough to reject Wolverine's argument. *See Paradise Hotel Corp. v. Bank of N.S.*, 842 F.2d 47, 50 (3d Cir. 1988) ("[W]e conclude that we should apply [§ 303(b)] as written without engrafting upon it an implied exception."). A majority of courts also support this interpretation of § 303(b). *See, e.g., id.* at 49-50; *In re Colon*, 474 B.R. 330, 366 (Bankr. D.P.R. 2012); *In re Tamarack Resort, LLC*, No. 09-03911-TLM, 2010 WL 1049955, at *6 & n.18 (Bankr. D. Idaho Mar. 17, 2010).

Nevertheless, Wolverine sets forth two cases with alternative interpretations of § 303(b). First, in *In re District at McAllen LP*, No. 14-70661, 2015 WL 4116862, at *2 (Bankr. S.D. Tex. July 7, 2015), the court held that § 303(b) requires **each** countable creditor to be undersecured by at least the statutory minimum amount set forth in § 303(b).[6]

Respectfully, we believe this interpretation runs contrary to the plain language of § 303(b). Generally, we must "construe a statute to give every word some operative effect." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004) (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 35–36

---

[6] The court in *District at McAllen* did not offer much analysis with respect to this conclusion. Other than stating that its reading of the statute excluded fully secured creditors, the court referenced the following language from *Colon* in support of its conclusion: "[C]ertain creditors such as secured creditors, creditors with contingent claims, creditors with claims that have been disputed, claims of insiders . . . must be excluded." 474 B.R. at 359. However, this quote did not represent the holding of *Colon*; instead, the quote is from *Colon*'s paraphrasing of a party's argument. *Id.* The *Colon* court actually held that fully secured creditors **do** qualify as countable creditors for purposes of the numerosity requirement of § 303(b). *Id.* at 366.

(1992)). Here, requiring each countable creditor to hold an unsecured or undersecured claim in the amount of $18,600 would render the word "aggregate" entirely inoperative. Because Congress explicitly provided that claims must **aggregate** at least $18,600, we believe § 303(b) simply requires that the total amount of unsecured debt, after combining the unsecured portions of all qualifying holders' claims, should amount to $18,600 or more. Under this interpretation, fully secured creditors would qualify as countable creditors so long as the remaining holders' unsecured claims meet the statutory minimum of $18,600.

Second, Wolverine references *In re Green*, No. 06-11761-FM, 2007 WL 1093791 (Bankr. W.D. Tex. Apr. 9, 2007), for the proposition that nonrecourse[7] creditors do not qualify as countable creditors because § 303(b)(1) states that eligible holders must hold "a claim against such

---

[7] Wolverine occasionally uses the terms "fully secured" and "nonrecourse" interchangeably and relies on cases, like *Green*, analyzing whether **nonrecourse** creditors qualify as "holders" under § 303. However, "[t]he term 'nonrecourse' describes a type of debt that is 'of, relating to, or involving an obligation that can be satisfied only out of the collateral securing the obligation and not out of the debtor's other assets.'" *Taberna Preferred Funding IV, Ltd. v. Opportunities II Ltd. (In re Taberna Preferred Funding IV, Ltd.)*, 594 B.R. 576, 586 (Bankr. S.D.N.Y. 2018) (citing Black's Law Dictionary (10th ed. 2014)). Whether a creditor is a nonrecourse creditor has no bearing on whether the creditor is fully or partially secured.

For purposes of this appeal, the record does not indicate whether the fully secured creditors the bankruptcy court counted were recourse or nonrecourse creditors. Thus, we only discuss nonrecourse creditors to the extent Wolverine argues that such creditors are analogous to fully secured creditors in that both types of creditors lack an incentive to participate in an involuntary petition because they may satisfy the debts owed to them by foreclosing on collateral.

**person**," whereas nonrecourse creditors only hold a claim against property. (Emphasis added).

In *Green*, the court relied heavily on the rule of construction set forth in § 102(2), which provides that the phrase "claim against the debtor" includes a claim against property of the debtor. *Green*, 2007 WL 1093791 at *7. Because § 303(b)(1) refers to holders with a claim against a "person," and not "the debtor," the *Green* court concluded that "the alleged debtor must be personally liable for the creditor's claim in order for that creditor to be 'counted.'" *Id.* at *8. The court further explained:

> If a claim against property was to be included, Congress clearly could have said so. It did not. And, the primary reason why claims against property were most likely not included is that holders of those claims have a remedy outside of bankruptcy [foreclosure against their collateral] whereas holders of unsecured claims against the person do not. Therefore, non-recourse secured creditors may not be counted.

*Id.* More recently, another decision echoed this line of reasoning. *In re Taberna Preferred Funding IV*, 594 B.R. at 594-97. In *Taberna*, the court considered whether creditors holding nonrecourse notes qualified as petitioning creditors under § 303(b)(1). *Id.* at 590-599.

There, the petitioning creditors argued that, in chapter 11 cases, § 1111(b) eliminated any distinction between recourse and nonrecourse creditors by allowing undersecured creditors to split their claims into a secured claim and an unsecured claim for any deficiency. *Id.* at 590-91. The court rejected this argument, reasoning that § 1111(b) applies only for claim

allowance and distribution purposes, and only if certain requirements are met. *Id.* at 591-92. Noting that the "gating" purpose of § 303(b) was fundamentally different from the purpose of § 1111(b) – to protect undersecured creditors if debtors elect to retain the lender's collateral – the court concluded that § 1111(b) was irrelevant to the issue of whether nonrecourse creditors qualify as petitioning creditors, even in chapter 11 cases. *Id.* at 593-94.

Like *Green*, the *Taberna* court largely rested its decision to exclude nonrecourse creditors as petitioning creditors on § 102(2). *Id.* at 594-97.[8] Although *Green* and *Taberna* provide thorough and thoughtful analyses, we are not convinced that § 102(2) is sufficient to exclude fully secured or nonrecourse creditors as countable creditors where Congress did not explicitly omit such creditors in § 303(b).

While the use of the word "person" instead of "debtor" is notable, the context in which the word is used in § 303(b)(1) suggests a different reason for the use of the word "person" instead of "debtor" that is unrelated to any intent by Congress to exclude fully secured or nonrecourse creditors. Specifically, § 303(b)(1) refers to a "claim against **such** person" (as opposed to, for example, **a** person). The word "such" must necessarily refer to a prior use of the word "person" within § 303.

---

[8] As further discussed in section B, the *Taberna* court also relied on certain policy considerations to reach its decision. *Taberna*, 594 B.R. at 593-95.

The prior uses of the word "person" occur in § 303(a) and (b), which provide, respectively, that involuntary cases may be commenced "only against a person" and that such cases "against a person" are initiated by following the requirements of § 303(b). Pursuant to § 101(41), the term "person" includes an "individual, partnership, and corporation, but does not include governmental unit[s]" unless certain exceptions apply. Thus, the function of the word "person" in § 303(a) is to delineate exactly which entities qualify as debtors subject to an involuntary petition. *See, e.g., Rusciano v. City of Atlantic City (In re Rusciano)*, No. 15-32888-ABA, 2020 WL 111470, at *3 (Bankr. D.N.J. Jan. 8, 2020) (dismissing an involuntary petition against a municipality because a municipality is not a "person" under § 303(a) and § 101(41)). Given this context, it would appear that Congress likely used the phrase "such person" in § 303(b)(1) simply to refer back to the type of entity that is subject to an involuntary petition under § 303(a), and not to prevent nonrecourse creditors from being counted.

In addition, while we agree with *Taberna* that § 1111(b) is irrelevant to the issues presented herein, the ultimate conclusion reached by that court – that all nonrecourse creditors, whether fully secured or undersecured, are not eligible as "holders" for purposes of § 303(b) – would run afoul of the plain language of § 303(b)(1). In that section, Congress specified that the claims of "holders" must exceed "the value of any lien on property of the debtor securing such claims held by holders of such claims." This language indicates that Congress anticipated that undersecured creditors would

12

qualify as countable creditors, but did not expressly make an exception for fully secured or nonrecourse creditors with undersecured claims.

In light of the above, we join a majority of courts in holding that fully secured or nonrecourse creditors are countable creditors under § 303(b).

**B.** **Relevant congressional history and policy considerations bolster our conclusion herein.**

In enacting the Code, Congress "overhauled the standards for involuntary bankruptcy as they existed under the former Bankruptcy Act of 1898; it relaxed them and allowed an involuntary bankruptcy at an earlier point in an entity's economic decline." *Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. 338, 342 (9th Cir. BAP 2019) (citation omitted). As part of this overhaul, Congress enacted § 303 as a revision of former § 59 of the Bankruptcy Act. *Paradise Hotel Corp.*, 842 F.2d at 50. Former § 59 "required only one petitioner when the debtor had less than twelve creditors and expressly provided that 'fully secured creditors' not be counted in the tally of creditors." *Id.* (quoting § 59(e)(4)). As aptly observed in *Paradise Hotel*, § 303 "retains the distinction between situations in which there are less than twelve creditors and those in which there are twelve or more, but deletes the reference to 'fully secured creditors.'" *Id.*

In light of the former Bankruptcy Act's express language disqualifying fully secured creditors as countable creditors, Congress's deletion of such language appears to be intentional. This legislative history further supports our interpretation of § 303(b) and strengthens the

13

conclusion that courts should only apply the exclusions explicitly specified in § 303(b).

Policy considerations also do not change our decision. At oral argument and in its briefs, Wolverine centered its policy argument on its assertion that fully secured creditors lack any incentive to place an alleged debtor into bankruptcy. However, to the extent a creditor's incentive factors into the question of whether such a creditor qualifies as a countable holder, we disagree that fully secured creditors always disfavor bankruptcy. For instance, among other potential incentives, a secured creditor may prefer liquidation of its collateral through bankruptcy to avoid certain delays, expenses, and liabilities otherwise borne by the secured creditor in foreclosing its collateral. Such a creditor also may, for example, prefer to preserve collateral otherwise in peril via court oversight in a bankruptcy case. Thus, we are not persuaded by Wolverine's blanket assertion that fully secured creditors never benefit from bankruptcy.

The *Taberna* court also voiced certain policy concerns in allowing nonrecourse creditors to participate in involuntary petitions, at least as petitioning creditors. In recognizing the "severe nature of involuntary relief," "the extreme consequences to the debtor in being forced into bankruptcy," and the fact that "creditors' ability to bring a debtor into bankruptcy can be abused," the court believed prohibiting nonrecourse creditors from participating as petitioning creditors would promote the

14

"gating" function of § 303(b). *Taberna*, 594 B.R. at 594-95 (internal quotations omitted).

Notwithstanding the fact that policy concerns should not override the plain language of a statute, the omission of nonrecourse creditors would not uniformly promote the "gating" function of § 303(b). In cases applying the *Taberna* court's interpretation of § 303(b) to countable creditors, as opposed to petitioning creditors, the omission of fully secured or nonrecourse creditors would actually serve the opposite purpose by reducing the number of countable creditors and, as a result, the number of petitioning creditors required to pursue an involuntary petition.[9]

While we agree that the concerns highlighted in *Taberna* are serious, so too are the concerns of creditors filing involuntary petitions. Any court reviewing this question ought to weigh both concerns. On the one hand, Congress alleviated the burden on alleged debtors not only by expressly limiting which entities qualify as petitioning creditors or countable creditors but also by enacting monetary remedies to disincentivize abusive filings and allow alleged debtors to recoup costs and fees. § 303(i); *see also In re QDOS, Inc.*, 607 B.R. at 342 (Congress "allowed for monetary remedies that counterbalanced [the] new liberality" of the statutes related to involuntary petitions).

---

[9] As noted above, § 303(b) sets forth the qualifications for **both** petitioning creditors and countable creditors. Because Congress used the same language for both purposes, it is unlikely that Congress intended a different construction of the same statutory language for petitioning creditors as compared to countable creditors.

On the other hand, Congress attempted to "relax" the previously burdensome requirements to file an involuntary petition. *QDOS*, 607 B.R. at 342. In easing access to involuntary petitions, the Code protects all creditors by preventing only select creditors from "racing to the courthouse to dismember the debtor." *Marciano v. Chapnick (In re Marciano)*, 708 F.3d 1123, 1128 (9th Cir. 2013) (quoting *Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1217 (9th Cir. 1988)); *see also In re Murray*, 543 B.R. 484, 496 (Bankr. S.D.N.Y. 2016) ("[I]nvoluntary petitions are favored because they **can prevent the diminution of assets by a debtor and provide equality of treatment among creditors**.") (emphasis in original), *aff'd sub nom.*, *Wilk Auslander LLP v. Murray (In re Murray)*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018)).

We do not believe our holding conflicts with any of the policy concerns stated above. In fact, the strong policy concerns related to both debtors and creditors only reinforces our decision to abide by Congress's explicit statutory language without "engrafting" additional "implied exception[s]." *Paradise Hotel*, 842 F.2d at 50. The language and history of § 303 reflects a tight balancing act by Congress to address both sides of the equation. We decline the invitation judicially to impose additional limitations that may interfere with that balance.

Based on the foregoing, fully secured creditors, whether recourse or nonrecourse, qualify as countable creditors under § 303(b).

16

## CONCLUSION

The bankruptcy court did not err in dismissing the involuntary petition against Ms. King. We therefore AFFIRM.