**In re Paul EVERETT, Alleged Debtor.**

**Bankruptcy No. 93–33555.**

United States Bankruptcy Court, N.D. Ohio, Western Division.

Dec. 20, 1994.

David Zoll, Toledo, OH, and Jennifer Hensal, Valley City, OH, for debtor.

Robert Kracht, Cleveland, OH, for Yamaha Motor Corp.

Melvin Banchek, Cleveland, OH, for Kadish & Bender.

Robert McIntyre, Cleveland, OH, for Neill Ann Hancock.

P. Cory Eckel, Robison, Curphey & O'Connell, Toledo, OH.

## OPINION AND ORDER GRANTING ORDER FOR RELIEF UPON INVOLUNTARY PETITION

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on the involuntary bankruptcy petition filed by Neill Ann Hancock, Administrator, WWA of the Estate of Louis A. Schultz ("LAS Estate"), Kadish & Bender ("K & B"), Neill Ann Hancock, Executrix of the Estate of Ann J. Schultz ("AJS Estate"), Yamaha Motor Corp., U.S.A. ("YMC"), and Prospec Electronics of South Carolina (collectively the "Petitioning Creditors") against Paul Everett (the "Debtor"). In consideration of the evidence adduced at the hearing, the Court finds that an order for relief under chapter 7 should be entered against the Debtor.

### BACKGROUND

The Petitioning Creditors filed an involuntary petition against the Debtor pursuant to 11 U.S.C. § 303 for an order for relief under chapter 7 on December 21, 1993 (the "Petition Date").

The Petitioning Creditors must demonstrate that three or more of such Petitioning Creditors hold claims which are not subject to a bona fide dispute. The Petitioning Creditors must further establish that the Debtor was generally not paying his debts as they became due, absent consideration of debts subject to a bona fide dispute. Lastly, the Petitioning Creditors must prove that their claims aggregate at least $5,000.00 more than the value of their liens on the Debtor's property.

## FACTS

The Debtor's principle employment during the past 20 years has been in manufacturing and repairing boats. The Debtor is presently self-employed as a marine consultant.

## THE NATURE OF THE PETITIONING CREDITORS' CLAIMS

K & B, YMC and Prospec Electronics of South Carolina ("Prospec") obtained prepetition judgments against the Debtor in state court. These judgments have not been appealed or vacated.

The LAS Estate obtained a judgment by confession in the amount of $258,312.27 (the "LAS Judgment") against the Debtor on May 1, 1991 in the Court of Common Pleas of Erie County, Ohio ("Erie Court"). *See* Defendant's Exhibit C. The LAS Judgment debt arose from a cognovit note which the Debtor executed in favor of the late Louis A. Schultz ("LAS"), the Debtor's former attorney. *See* Plaintiff's Exhibit 45. This cognovit note was secured by a mortgage on certain parcels of residential real estate owned by the Debtor (the "LAS Mortgage"). *See* Plaintiff's Exhibit 44. The Debtor did not appeal the LAS Judgment.

However, the Debtor filed a motion to vacate the LAS Judgment pursuant to Ohio R.C.P. 60(B) in the Erie Court prior to the Petition Date. Subsequent to the Petition Date, on July 29, 1994, the Erie Court granted the Debtor's motion to vacate the judgment obtained by the LAS Estate on procedural grounds. *See* Defendant's Exhibit D (granting motion to vacate judgment based on plaintiff's failure to respond).

The Debtor filed a complaint alleging negligence, legal malpractice, breach of fiduciary duty and fraud against the late LAS in the Erie Court in 1990. In addition, the Debtor has alleged that the late Ann J. Schultz ("AJS"), LAS' wife, "cooperated and participated in the fraudulent acts and misrepresentations of [LAS]" and "fraudulently allowed [LAS] to execute documents in her name".

The AJS Estate asserts a claim of $165,645.67 based on a factor agreement between the Debtor, and LAS and AJS (the "AJS Factor Loan"). *See* Plaintiff's Exhibit 47.

The AJS Estate also asserts a claim based on a note and mortgage dated April 9, 1979 between the Debtor and AJS (the "AJS Mortgage Debt"), in the principal amount of $40,000.00. *See* Plaintiff's Exhibit 33. According to the AJS Estate, the amount due on the AJS Mortgage Debt was $150,851.02 on the Petition Date. *See* Plaintiff's Exhibit 34, p. 3. The AJS Mortgage Debt is secured by a mortgage on certain parcels of residential real estate owned by the Debtor (the "AJS Mortgage"). *See* Plaintiff's Exhibit 32.

## WHETHER THE DEBTOR WAS GENERALLY NOT PAYING HIS DEBTS AS THEY BECAME DUE ON THE PETITION DATE

At trial, the Debtor acknowledged that the following prepetition judgments had been entered against him:

| Creditor | Court | Date | Amount |
|---|---|---|---|
| Prospec | Sandusky Municipal Court (*See* Plaintiff's Exhibit 1) | 1/11/91 | $ 2,624.58 |
| YMC | Huron Municipal Court (*See* Plaintiff's Exhibit 2) | 1/11/91 | $ 5,786.51 |
| Progressive Plastics | Huron Municipal Court (*See* Plaintiff's Exhibit 3) | 1/11/91 | $ 3,390.00 |
| Society Bank & Trust | Court of Common Pleas, Erie County (*See* Plaintiff's Exhibit 5) | 8/31/91 | $11,075.86 |
| Estate of G.E. Brehm | Huron Municipal Court (*See* Plaintiff's Exhibit 6) | 8/12/91 | $ 7,602.17 |
| K & B | Cleveland Municipal Court (*See* Plaintiff's Exhibit 7) | 2/13/92 | $ 3,284.22 |
| Flex–Temp Employment Services, Inc. | Huron Municipal Court (*See* Plaintiff's Exhibit 24) | 3/20/91 | $ 7,290.84 |

These judgments have not been appealed or vacated. Nor had they been satisfied by the Debtor as of the Petition Date.

The Debtor also acknowledged that the following prepetition liens had been filed against him by federal and state agencies:

| Creditor | Date | Amount |
|---|---|---|
| United States-tax lien (See Plaintiff's Exhibit 8) | 1/23/92 | $ 9,182.09 |
| Ohio Bureau of Workers' Compensation (See Plaintiff's Exhibit 9) | 5/11/92 | $ 8,642.73 |
| United States-tax lien (See Plaintiff's Exhibit 10) | 5/13/92 | $ 419.72 |
| Ohio Bureau of Employment Services (See Plaintiff's Exhibit 12) | 8/31/92 | $ 502.35 |
| United States-tax lien (See Plaintiff's Exhibit 13) | 10/6/92 | $104,970.94 |

The Debtor testified that these liens had not been satisfied or released as of the Petition Date.

The Debtor also acknowledged that he had defaulted on the following prepetition debts:

| Creditor | Amount |
|---|---|
| "Lender Master Lease" | $ 1,500.00 |
| A.M. Federal | $65,000.00 |
| AT & T | Unknown |
| Sears | Unknown |
| Chemical Bank | Unknown |
| Sohio | Unknown |
| Sunoco | Unknown |
| District Petroleum Products | Unknown |
| Marathon | Unknown |
| Citibank | Unknown |
| Eaton Financial | Unknown |
| Powell | Unknown |

The Debtor testified that these debts remained unpaid on the Petition Date.

The Debtor further testified that Peter Gray ("Gray") obtained a judgment against him in the amount of $23,200.00 in the Common Pleas Court of Erie County on July 6, 1992. See Plaintiff's Exhibit 11. The Debtor testified that he did not make any payments on this debt prior to the time that Gray filed suit to collect the debt. This judgment has been satisfied. See Plaintiff's Exhibit 27 (agreement between Peter C. Gray and the Debtor dated February 10, 1993); Defendant's Exhibit V (letter from attorney Charles Pawlukiewicz dated October 25, 1994 indicating that the Debtor's debt to Gray "has been extinguished").

The Debtor also testified that a foreclosure decree was entered against him on September 24, 1993 (the "Foreclosure Decree") based on his debt owed on a commercial property located at 1807 Sawmill Parkway in Huron, Ohio (the "Factory"). See Plaintiff's Exhibit 21. The Foreclosure Decree found that the Debtor owed the Erie County Treasurer a debt for real estate taxes on the Factory. See Plaintiff's Exhibit 21, p. 2. The Foreclosure Decree further found that the Debtor owed the Resolution Trust Corporation $250,551.94 plus interest on a first mortgage secured by the Factory. See Plaintiff's Exhibit 21, p. 1. The Debtor testified that he failed to make payments on the first mortgage debt to the RTC for a substantial period of time prior to the Foreclosure Decree. In addition, the Foreclosure Decree found that the Debtor owed Stephen Lochner ("Lochner") $75,000.00 plus interest based on a second mortgage on the Factory. See Plaintiff's Exhibit 21, p. 2. The Debtor testified that Lochner instituted the foreclosure proceeding on the Factory because the Debtor failed to make payments to Lochner. The Debtor testified that the foregoing debts on the Factory remained unpaid on the Petition Date.

The Debtor testified that he owed a debt to the City of Huron on the Petition Date which approximated $9,300.00 (the "Huron Debt"). The Debtor is current on the Huron Debt. See Defendant's Exhibit E (letter from City of Huron stating that Debtor is current in payments and that current balance on obligation totals $9,322.40).

The Debtor testified that he is current in his payments on a first mortgage secured by his home at 1817 Cedar Point Road in Sandusky, Ohio (the "Home"). The Debtor further testified that he is current on his first mortgage obligations on residential rental properties which he owns in Sandusky, Ohio at 112 Taylor St. (the "Taylor Property") and at 1802 Bauer Ave. (the "Bauer Property").

The Debtor testified that he was delinquent in paying the real estate taxes on the

Home which totaled $13,845.34. *See* Plaintiff's Exhibit 55, p. 1. The Debtor also testified that he was delinquent in his obligations for real estate taxes on the Taylor Property and the Bauer Property in the amounts of $4,172.31 and $3,581.85, respectively. *See* Plaintiff's Exhibit 55, pp. 2–4.

The Debtor testified that his prepetition obligation to his friend Ed Feick ("Feick") in the amount of $41,466.00 (the "Feick Note") remains unpaid. The Debtor testified that the payment date of the Feick Note has been extended.

The Debtor's prepetition debt to his mother in the amount of $60,141.00 remains unpaid. The Debtor testified that his mother has agreed to deduct this debt from the Debtor's inheritance.

The Debtor testified that he defaulted in his obligation to Dollar Leasing for a computer system which he had previously purchased. The Debtor testified that Gary Bergmoser, a friend of the Debtor, assumed payments on this debt and that this debt had been repaid by "someone else".

The Debtor testified that he has repaid a debt to Rig Leasing incurred in connection with the purchase of a forklift/towmotor in 1990. The Debtor also testified that he has repaid a loan which he incurred in order to purchase a truck several years prior to the Petition Date.

**WHETHER THE CLAIMS OF THE LAS ESTATE AND THE AJS ESTATE WERE THE SUBJECT OF A BONA FIDE DISPUTE ON THE PETITION DATE**

At trial, the Petitioning Creditors presented the testimony of Neill Ann Hancock ("NAH") in her capacity as the administrator of the LAS Estate and the executrix of the AJS Estate. NAH is the daughter of the late LAS and AJS. NAH testified that her duties for the two estates include collecting obligations due the estates.

NAH identified the agreement evidencing the AJS Factor Loan at trial. *See* Plaintiff's Exhibit 47. NAH testified that the balance on the AJS Factor Loan as of June 15, 1990 totaled $165,645.67. NAH testified that, to the best of her knowledge, the AJS Factor Loan has not been satisfied and represents a debt owed to the AJS Estate. According to NAH, the Debtor's total obligation to the AJS Estate on the AJS Factor Loan totaled $231,915.72 on the Petition Date, including principal and interest.

The Debtor acknowledged that he received advances under the AJS Factor Loan from LAS and AJS but was unsure as to the total amount of such advances.

NAH testified that Plaintiff's Exhibit 33A represented the original copy of the note evidencing the AJS Mortgage Debt.

Contrary to NAH's testimony, the Debtor testified that Defendant's Exhibit P represented the original document evidencing the AJS Mortgage Debt. He further testified that a written statement on the face of Defendant's Exhibit P, in the handwriting of the late LAS, indicated that the AJS Mortgage Debt had been satisfied.

Jose Suarez ("Suarez"), a self-employed computer accounting consultant who performed tasks on behalf of both the LAS Estate and the Debtor, testified in support of the Petitioning Creditors' argument that the Debtor acknowledged his obligations under the AJS Factor Loan and the AJS Mortgage Debt. Suarez testified that he investigated the debts allegedly owed by the Debtor to the LAS Estate and the AJS Estate with a person named Janet who worked at Sea Raider, a company allegedly owned by the Debtor. Suarez testified that the records held by Janet at Sea Raider "coincided" with the records held by the LAS Estate as to the Debtor's obligations to the LAS Estate.

NAH testified as to the underlying debt on the LAS Judgment. *See* Plaintiff's Exhibit 45.

Further, the LAS Estate adduced the Debtor's testimony in support of its argument that the Debtor's claims against the LAS Estate in the Erie Court were barred by certain state statutes of limitation.

The Debtor introduced copies of certain pleadings and docket sheets from the Erie Court in support of his argument that the claims of the LAS Estate and the AJS Es-

tate were the subject of a bona fide dispute. *See* Defendant's Exhibit A (Motion to Vacate Judgment of LAS Estate filed in Erie Court); Defendant's Exhibit B (certified copy of docket sheet from litigation against LAS Estate and AJS Estate in Erie Court); Defendant's Exhibit C (certified copy of appearance docket from litigation in Erie Court); Defendant's Exhibit D (certified copy of judgment in Erie Court); Defendant's Exhibit M (certified copy of answer and counterclaim filed in Erie Court), Defendant's Exhibit N (certified copy of Fourth Amended Complaint filed in Erie Court), Defendant's Exhibit O (certified copy of answer to Fourth Amended Complaint).

## WHETHER THE PETITIONING CREDITORS' CLAIMS AGGREGATED $5,000.00 MORE THAN THE VALUE OF THEIR LIENS ON THE DEBTOR'S PROPERTY

### The Value of the Debtor's Residential Properties

At trial, the parties disputed whether the Petitioning Creditors' claims aggregated $5,000.00 more than the value of the property securing their liens. In this regard, the parties each supplied expert testimony as to the value of the Debtor's residential properties securing certain of the Petitioning Creditors' claims.

The Debtor's expert David Biechele ("Biechele"), the Petitioning Creditors' expert James Delahunt ("Delahunt"), and the Debtor testified as to the values of the Home, the Taylor Property, the Bauer Property, and a lot adjacent to the Bauer Property which is owned by the Debtor ("the Adjacent Lot"). This testimony can be summarized as follows:

| Property | Value per Biechele | Value per Delahunt | Value per Debtor |
|---|---|---|---|
| Home | $350,000.00 | $235,000.00 | $500,000.00 |
| Taylor | $ 55,000.00 | $ 54,000.00 | $ 55,000.00 |
| Bauer | $ 70,000.00 | $ 72,000.00 | $ 78,000.00 |
| Adjacent Lot | $ 14,000.00 | $ -0- | $ 14,000.00 |
| Total | $489,000.00 | $361,000.00 | $647,000.00 |

Biechele acknowledged that the properties which he used as "comparable sales" in appraising the Home were properties which contained houses which were newer and had much greater square footage than the Home.

Nevertheless, Biechele testified that he felt that the Home's value approximated $350,-000.00 in view of its location and aesthetic value. In addition to the value attributable to the Home's location, Biechele testified that the Home's value was enhanced by the high quality of the materials and craftsmanship contained in the Home.

Delahunt estimated the value of the Home as $235,000.00 as of January, 1994 according to his "drive by" appraisal. Delahunt testified that he accorded greater weight to the Home's size in performing his appraisal than did Biechele.

Biechele testified that Adjacent Lot was large enough to accommodate a home while Delahunt testified that the Adjacent Lot was not "buildable". Biechele and Delahunt further differed as to whether the construction of a Home on the Adjacent Lot would detract from the value of the Bauer Property.

The Court found Biechele's testimony persuasive as to the values for the Home, the Taylor Property, the Bauer Property and the Adjacent Lot. Therefore, the Court finds that the value of the Debtor's residential properties aggregated $489,000.00 on the Petition Date.

### The Liens on the Debtor's Residential Properties

The parties also presented evidence as to the liens encumbering the real estate owned by the Debtor. *See* Plaintiff's Exhibit 19 (Preliminary Judicial Report on Debtor's residential properties); Plaintiff's Exhibit 20 (Supplemental Judicial Report on Debtor's residential properties); Defendant's Exhibit U.

The parties agree that the Home, the Taylor Property and the Bauer Property are encumbered by certain real estate taxes and first mortgages. The parties also agree that each property is subject to a junior mortgage securing the Feick Note (the "Feick Mortgage"). In addition, the parties agree that the Debtor's properties are encumbered by a number of judgment liens, junior in priority to the consensual liens on the Debtor's residential properties.

However, the parties disagree as to whether the Court should consider the LAS Mortgage and the AJS Mortgage in determining whether K & B, YMC and Prospec were unsecured on the Petition Date.

### DISCUSSION

### APPLICABLE STATUTE

Section 303 provides, in relevant part, that:

(b) [a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute ... if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holder of such claims[.]

.    .    .    .    .

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute[.]

### BURDEN OF PROOF

■ The Petitioning Creditors bear the burden of proof on their involuntary petition against the Debtor by the preponderance of the evidence. *Cf. Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 1056, 112 L.Ed.2d 755 (1991) (noting that preponderance standard generally applies in civil actions between private litigants).

### WHETHER THE DEBTOR WAS GENERALLY NOT PAYING HIS DEBTS AS THEY BECAME DUE ON THE PETITION DATE

■ The evidence adduced at trial, as more fully set forth at pp. 135–37 *supra,* lends overwhelming support to the conclusion that the Debtor was generally not paying his debts as they be became due on the Petition Date, absent any consideration of the debts owed to the Petitioning Creditors. *See Concrete Pumping Service, Inc. v. King Construction Co. (In re Concrete Pumping Service, Inc.),* 943 F.2d 627, 630 (6th Cir.1991) (stating that "[t]he concept of generality is comparative; it has to do not with the absolute number of some kind of event but rather with the number as a proportion of possible outcomes"); *cf. In re Ethanol Pacific, Inc.,* 166 B.R. 928, 931 (Bankr.D.Idaho 1994) (examining "the number of debts, the amount of delinquency, the materiality of nonpayment and the nature of the debtor's conduct of his financial affairs") (citing *In re Tarletz,* 27 B.R. 787, 789 (Bankr.D.Colo.1983)).

■ In making this determination, the Court notes that the "[m]ere failure of a creditor to demand payment of a debt does not excuse failure to pay it." *In re West Side Community Hospital, Inc.,* 112 B.R. 243, 256 (Bankr.N.D.Ill.1990) (citing *In re All Media Properties, Inc.,* 5 B.R. 126, 145 (Bankr.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981)).

First, the Court finds that the number of debts which the Debtor has failed to pay in relation to the evidence before the Court as to his total debts on the Petition Date indicates that he was generally not paying his debts as they became due on the Petition Date. Second, the Court finds that the amount of the Debtor's unpaid debts in relation to the evidence presented as to the total amount of his debts compels a finding that the Debtor was failing to generally pay his debts as they became due on the Petition Date. Third, the Court finds that the evidence as to the length of time during which the Debtor had failed to pay his debts strongly supports the conclusion that the Debtor had failed to generally pay his debts as they became due on the Petition Date.

## WHETHER K & B'S CLAIM IS CONTINGENT AS TO LIABILITY OR THE SUBJECT OF A BONA FIDE DISPUTE

■ The Debtor has not contested K & B's standing as a petitioning creditor. Accordingly, the Court finds that K & B is a proper petitioning creditor of the Debtor. *See In re Shapiro,* 128 B.R. 328 (Bankr. E.D.N.Y.1991) (debtor waived objections to eligibility of petitioning creditors by failing to assert such objections).

## WHETHER THE CLAIMS OF YMC AND PROSPEC ARE CONTINGENT AS TO LIABILITY OR THE SUBJECT OF A BONA FIDE DISPUTE

The Court finds that the claims of YMC and Prospec are neither contingent as to liability nor the subject of a bona fide dispute.

■ In determining whether creditors' claims are subject to a "bona fide dispute" within the meaning of § 303(b)(1), courts "have all adopted an objective standard, based on the reasoning of *In re Lough,* 57 B.R. 993 (Bankr.E.D.Mich.1986)". *Subway Equipment Leasing Corp. v. Sims (In re Sims),* 994 F.2d 210, 220–21 (5th Cir.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 702, 126 L.Ed.2d 669 (1994). In applying this standard, the Court must determine " 'whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt. The court need not determine the probable outcome of the dispute, but merely whether one exists.' " *In re Data Synco, Inc.,* 142 B.R. 181, 182 (Bankr.N.D.Ohio 1992) (quoting *Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1544 (10th Cir.1988) (other citations and internal quotation marks omitted)).

■ The unappealed, unstayed final judgments held by YMC and Prospec are not subject to a "bona fide dispute". *See In re Raymark Indus., Inc.,* 99 B.R. 298, 300 (Bankr.E.D.Pa.1989) (unstayed judgment not subject to bona fide dispute); *In re Caucus Distributors, Inc.,* 83 B.R. 921, 928–29 (Bankr.E.D.Va.1988) (unstayed contempt fine was not subject to bona fide dispute); *In re Drexler,* 56 B.R. 960 (Bankr.S.D.N.Y.1986) (claim based on unstayed judgment pending appeal was not subject to bona fide dispute); *cf. Concrete Pumping Service, Inc. v. King Construction Co. (In re Concrete Pumping Service, Inc.),* 943 F.2d 627, 629 (6th Cir. 1991) (noting that contested involuntary bankruptcy petition did not involve a bona fide dispute as petitioner's claim had been reduced to judgment prepetition).

Most importantly, these prepetition judgments are res judicata under Ohio law. *See Columbus v. Alden E. Stilson & Associates,* 90 Ohio App.3d 608, 630 N.E.2d 59 (1993) (consent judgment had res judicata effect), *mot'n cert. overruled,* 68 Ohio St.3d 1461, 627 N.E.2d 1002 (1994); *Crowe v. Riley,* 63 Ohio St. 1, 57 N.E. 956, 957 (1900) (court erred in failing to give preclusive effect to default judgment); *see also State ex rel Bd. of Bratenahl Local School Dist. v. State Bd. of Ed.,* 58 Ohio St.2d 189, 12 O.O.3d 187, 389 N.E.2d 503 (1979) (per curiam) (unappealed agreed order had res judicata effect); *McCurdy v. Baughman,* 43 Ohio St. 78, 1 N.E. 93 (1885) (default judgment was res judicata). This Court must give full faith and credit to such prepetition state court judgments. *See Johnson v. Laing (In re Laing),* 945 F.2d 354 (10th Cir.1991) (bankruptcy court erred in failing to give preclusive effect to prepetition state court judgment and in redetermining liability based on equitable principles); *Kelleran v. Andrijevic,* 825 F.2d 692, 694–95 (2nd Cir.1987) (bankruptcy court was bound to give preclusive effect to prepetition default judgments obtained in state court despite bankruptcy court's conclusion that such claims were "wholly without merit"), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *see also Boyajian v. DeFusco (In re Giorgio),* 862 F.2d 933, 936–37 (1st Cir.1988) (finding that bankruptcy court could not disregard proof of claim based upon valid prepetition state court judgment); *In re Shaner,* 96 B.R. 132 (Bankr. S.D.Ohio 1989) (objection to proof of claim overruled because creditor's prepetition state court judgment was entitled to full faith and credit); *cf. Gouveia v. Tazbir,* 37 F.3d 295, 300–01 (7th Cir.1994) (finding that bankruptcy court's equitable powers are subject to full faith and credit clause in declining to invoke 11 U.S.C. § 105 to set aside permanent injunction issued by state court); *First Jersey*

*Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564 (3rd Cir.1991) (state court entry of pre-petition summary judgment on issue of liability entitled to collateral estoppel effect). The Debtor provided no evidence that the state courts which granted the YMC judgment or the Prospec judgment lacked jurisdiction. Nor has he alleged that such state court judgments were obtained by fraud perpetrated upon the state courts. *Cf. Coulson v. Coulson*, 5 Ohio St.3d 12, 5 OBR 73, 448 N.E.2d 809, 811 (1983) (noting that a fraud upon the court " 'embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication' ") (quoting 7 Moore's Federal Practice (2 Ed.1971) 515, para. 60.33) (other citations omitted).

■ The Debtor argues that the claims of YMC and Prospec are subject to a bona fide dispute because he is presently engaged in state court litigation with the LAS Estate and the AJS Estate which will assertedly enable him to liquidate YMC and Prospec's claims. The Court disagrees. *See In re Sims*, 994 F.2d at 221 (finding that the debtors' contention that they were unable to make payments on certain debts because a third party failed to remit payment of sums owed to the debtors "amount[ed] to nothing more than an attempt to explain why [the debtors] failed to pay—it d[id] not call into question the validity of their debts"). Similarly, the Debtor's subjective belief that these judgment debts are the responsibility of the late LAS does not render them subject to a bona fide dispute. *See Bartmann v. Maverick Tube Corp.*, 853 F.2d at 1544 (stating that "the debtor's subjective intent does not control whether a claim is considered to be subject to a bona fide dispute") (citing *In re Tikijian*, 76 B.R. 304, 314 (Bankr.S.D.N.Y. 1987)).

## WHETHER THE CLAIM OF THE LAS ESTATE IS CONTINGENT AS TO LIABILITY OR THE SUBJECT OF A BONA FIDE DISPUTE

■ The Court finds that the claim of the LAS Estate is not subject to a bona fide dispute.

The LAS Judgment is res judicata as to the Debtor's liability to the LAS Estate and the amount of such liability, notwithstanding the fact that the Debtor had a Rule 60(B) motion pending in Erie Court on the Petition Date. *See Corrigan v. Downing*, 55 Ohio App.3d 125, 562 N.E.2d 923, 924 (1988) (maker of cognovit note's claim that payee fraudulently induced signature on cognovit note barred by res judicata effect of judgment by confession); *In re Jarrett*, 71 B.R. 123, 124 (Bankr.N.D.Ohio 1987) (judgment by confession given preclusive effect under Ohio law); *cf.* Ohio R.C.P. 60(B) (stating that a motion filed pursuant to Ohio R.C.P. 60(B) "does not affect the finality of a judgment or suspend its operation").

Significantly, the state court's postpetition order granting the Debtor's motion to vacate the LAS Judgment is void as violative of 11 U.S.C. § 362(a)(1). *See Fleet Consumer Discount Co. v. Graves (In re Graves)*, 33 F.3d 242, 247–48 (3rd Cir.1994) (finding that state court judgment entered in violation of automatic stay was void); *In re Capgro Leasing Associates*, 169 B.R. 305, 313–14 (Bankr. E.D.N.Y.1994) (state court judicial acts in violation of automatic stay are void) (citations omitted); *see also NLT Computer Services Corp. v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir.1985) (vacating and remanding federal district court order entered in violation of the automatic stay after filing of involuntary petition); *Cathey v. Johns–Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir.1983) (bankruptcy court must focus on "the debtor's status at the initial proceeding" in determining the applicability of 11 U.S.C. § 362(a)(1)).

■ This Court has previously found that the existence of a counterclaim does not establish a bona fide dispute. *In re Data Synco, Inc.*, 142 B.R. at 182 (citing *In re Onyx Telecommunications, Ltd.*, 60 B.R. 492, 498 (Bankr.S.D.N.Y.1985)). Similarly, the fact that the Debtor sought relief from the LAS Judgment on the Petition Date and seeks judgment against the LAS Estate based upon the purported negligence, breach

of fiduciary duty, legal malpractice and fraud of LAS does not create a bona fide dispute as to the LAS Estate's claim.

## WHETHER THE LAS ESTATE HAS PROCEEDED IN BAD FAITH

■ The evidence proffered by the Debtor at trial as to the alleged personal malice of NAH towards the Debtor does not state a cause of action which would defeat the claim of the LAS Estate. *See Miyao v. Kuntz (In re Sweet Transfer & Storage, Inc.)*, 896 F.2d 1189, 1191 (9th Cir.1990) (counterclaim for bad faith only permissible to the extent that such claim defeats the petition) (citing Fed. R.Bankr.P. 1011(d)); *see also* 11 U.S.C. § 303(h) (court may grant damages for bad faith "[i]f the court dismisses a petition under [§ 303]"); *Glinka v. Dartmouth Banking Co. (In re Kelton Motors, Inc.)*, 121 B.R. 166, 185 (Bankr.D.Vt.1990) (stating that "[g]enerally a dismissal of the involuntary petition is a condition precedent to a bad faith action for damages under § 303(i)") (citations omitted).

Further, the fact that the Petition was filed against the Debtor while state court proceedings were pending between the Debtor and the LAS Estate does not support a finding that the LAS Estate has proceeded in bad faith. *See In re Sims*, 994 F.2d at 222 (the fact that creditors filed involuntary petition after creditors filed claims against the debtors in state court and the debtors asserted counterclaims did not establish bad faith by creditors); *see also NLT Computer Services v. Capital Computer Systems*, 755 F.2d at 1258 (stating that creditor's motivation in instituting involuntary petition while civil action was pending against debtor in federal court was "neither worse nor better than that which normally triggers such a filing").

## WHETHER THE CLAIM OF THE AJS ESTATE IS CONTINGENT AS TO LIABILITY OR THE SUBJECT OF A BONA FIDE DISPUTE

Having considered the documentary evidence and the testimony of NAH, Suarez and the Debtor, the Court finds that an objective factual basis exists for a bona fide dispute as to the validity of the AJS Factor Loan.

The Court further finds that an objective factual basis exists for a bona fide dispute as to the validity of the AJS Mortgage Debt.

## WHETHER THE CLAIMS OF K & B, YMC AND PROSPEC AGGREGATED AT LEAST $5,000.00 MORE THAN THE VALUE OF THE LIENS SECURING THEIR CLAIMS

The Court concludes that the claims of K & B, YMC and Prospec aggregated at least $5,000.00 more than the value of the liens securing their claims.

■ As a preliminary matter, the Court notes that a fully secured creditor may serve as a petitioning creditor under § 303. *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 49–50 (3rd Cir.1988); *Downer's Grove Nat'l Bank v. Fox (In re Fox)*, unpublished, 1994 WL 484596 at *3 (N.D.Ill.1994) (citation omitted); *In re Knoth*, 168 B.R. 311, 315 (Bankr.D.S.C.1994) (citation omitted); *In re Crabtree*, 32 B.R. 837, 839 (Bankr. E.D.Tenn.1983) (citation omitted).

The Court found Biechele's testimony persuasive as to the values for the Home, the Taylor Property, the Bauer Property and the Adjacent Lot. Therefore, the Court finds that the value of the Debtor's residential properties aggregated $489,000.00 on the Petition Date.

■ The Court further finds that the Debtor's residential properties were subject to the following liens:

| | | |
|---|---|---|
| a. | Real estate taxes | $ 21,599.50 |
| b. | Mortgage of Bank One, Lima on the Home (*see* Defendant's Exhibit H) | $ 42,972.60 |
| c. | Mortgage of Bank One, Fremont on Taylor Property (*see* Defendant's Exhibit G) | $ 16,375.67 |
| d. | AJS Mortgage on the Home and on Taylor Property (*see* Plaintiff's Exhibit 34; *see also* p. 3 *supra*) | $150,851.02 |
| e. | Mortgage of First Union Mortgage Corp. on Bauer Property (*see* Defendant's Exhibit F) | $ 12,117.53 |
| f. | LAS Mortgage on the Home, Taylor Property, and Bauer Property | $258,312.27 |

h. ■■■■■■■■■■■■■■■■■■■■

h.
i. ■■■■■■■■■■■■■■■■■■■■

j.
k. ■■■■■■■■■■■■■■■■■■■■

n. ■■■■■■■■■■■■■■■■■■■■

o. ■■■■■■■■■■■■■■■■■■■■

---

Upon review of the foregoing evidence, the Court concludes that the claims of K & B, YMC and Prospec exceeded the value of the property securing their liens by greater than $5,000.00 on the Petition Date.

■■■ At trial, the Debtor argued that, in calculating whether K & B, YMC and Prospec were unsecured on the Petition Date, the Court should disregard senior liens which secure debts disputed by the Debtor. The Court rejects this argument. First, the plain language of § 303 does not contemplate an inquiry into the bona fides of senior lien creditors' claims in calculating the secured status of a petitioning creditor. Section 303 mandates that a bankruptcy court consider bona fide disputes as to a creditor's claim in certain contexts. *See* 11 U.S.C. § 303(b) (requiring that petitioners hold claims which are not "the subject of a bona fide dispute"); 11 U.S.C. § 303(h)(1) (requiring court to disregard debts subject to a bona fide dispute in determining whether debtor is generally paying debts as they come due). If Congress had intended bankruptcy courts to disregard certain liens in calculating the secured status of petitioning creditors, Congress would have expressly stated this in the statute. Second, the Court cannot conclude that Congress intended a petitioning creditor to shoulder the onerous burden of proving that no bona fide dispute exists for each of a debtor's senior lien creditors.

## WHETHER YMC, PROSPEC AND K & B MAY WAIVE THEIR LIENS IN ORDER TO PARTICIPATE IN THE INVOLUNTARY PETITION

■■■ The Court further finds that YMC, Prospec and K & B waived their liens and may participate in the involuntary petition as unsecured creditors.

The cases decided under both the Bankruptcy Code and the Bankruptcy Act have uniformly held that a secured creditor may waive its lien and participate in an involuntary petition as an unsecured creditor. *See Spilka v. Rist (In re Wm. J. Braun Builders, Inc.)*, 262 F.2d 107, 107–08 (per curiam) (6th Cir.1958) (finding that secured creditor could participate in involuntary petition and that secured creditor's participation in involuntary petition constituted a waiver of a portion of its secured claim under the Bankruptcy Act); *cf. United States Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 379, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988) (noting that "an undersecured creditor is entitled to 'surrender or waive [its] security and prove [its] entire claim as an unsecured one' ") (quoting *United States Nat. Bank v. Chase Nat. Bank*, 331 U.S. 28, 34, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320 (1947)). Moreover, courts have permitted petitioning creditors to expressly waive their liens subsequent to the filing of an involuntary petition in view of the fact that such a waiver inures to the benefit of all creditors. *See Missco Homestead Ass'n v. United States*, 185 F.2d 280, 282 (8th Cir. 1950) (finding waiver based on oral renunciation of lien during hearing on petition);

*Mount Vernon Hotel Co. v. Block*, 157 F.2d 637, 639–40 (9th Cir.1946) (finding waiver based on creditor's testimony in open court that he had waived security on advice of counsel); *Greenville Banking & Trust Co. v. Selcow*, 25 F.2d 78, 79 (3rd Cir.1928) (finding waiver where petitioner released previously recorded lien and offered to waive lien in open court); *Morrison v. Rieman*, 249 F. 97, 101–03 (7th Cir.1917) (finding that creditor could waive security subsequent to filing of petition), *cert. denied*, 245 U.S. 669, 38 S.Ct. 190, 62 L.Ed. 539 (1918); *Carteret Savings Bank, F.A. v. Nastasi–White, Inc. (In re East–West Assoc.)*, 106 B.R. 767, 771 (S.D.N.Y.1989) (finding that secured creditor could waive a portion of its lien in order to participate in petition) (citations omitted); *In re Knoth*, 168 B.R. 311, 316 (Bankr.D.S.C. 1994) (finding that creditor waived its lien at hearing on involuntary petition); *In re Sundown Associates*, 150 B.R. 156, 158–59 (Bankr.E.D.Va.1992) (finding that holder of nonrecourse, secured claim could waive a portion of its security in order to join in involuntary petition).

Counsel for YMC and Prospec represented to the Court at trial that YMC and Prospec had released their liens. Such representation constituted an express waiver of the liens held by YMC and Prospec for all purposes in this bankruptcy case. Moreover, the Petitioning Creditors provided the Court with documents evidencing the fact that YMC, Prospec and K & B had released their judgment liens. *See* Plaintiff's Exhibit 14, Release of Judgment Lien by YMC; Plaintiff's Exhibit 15, Release of Judgment Lien by Prospec; Plaintiff's Exhibit 60, Release of Judgment Lien by K & B. Therefore, the Court finds that YMC, Prospec and K & B expressly waived their liens.

▆▆ The Debtor further argues that YMC and Prospec's postpetition waiver of their liens did not render their claims unsecured to the extent of $5,000.00 as the requirements of § 303 are jurisdictional. The Court disagrees. The statutory elements set forth in § 303 "are not jurisdictional in the technical sense of subject matter jurisdiction, but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings". *Rubin v. Belo Broadcasting Corp. (In re Rubin)*, 769 F.2d 611, 614 n. 3 (9th Cir. 1985); *cf. Bradner v. Cooper School of Art, Inc. (In re Cooper School of Art, Inc.)*, 709 F.2d 1104, 1106 (6th Cir.1983) (per curiam) (finding that bankruptcy court did not lose jurisdiction to order award of costs and fees to debtor upon dismissal of involuntary petition). Indeed, the statutory language of § 303(h), providing that a court "shall order relief against the debtor in an involuntary case" if the petition is not timely controverted, belies a congressional intent to make the elements set forth in § 303 preconditions to a bankruptcy court's subject matter jurisdiction. 11 U.S.C. § 303(h); *see Hutter Associates, Inc. v. Women, Inc. (In re Hutter Associates, Inc.)*, 138 B.R. 512, 516 (W.D.Va.1992) (stating that "defects in the number of creditors in involuntary petitions may be waived when the debtor fails to answer, and these defects do not deprive the bankruptcy court of subject matter jurisdiction") (citation omitted); *In re Shapiro*, 128 B.R. 328 (debtor waived objections to eligibility of petitioning creditors by failing to assert such objections); *In re Barth*, 109 B.R. 570, 574 (Bankr. D.Conn.1990) ("[t]he number of petitioning creditors is unrelated to the issue of the court's subject matter jurisdiction, and a lack of the requisite number of petitioning creditors does not deprive the court of jurisdiction to enter an order for relief"). Moreover, the fact that § 303(c) permits an unsecured creditor, which creditor is not a petitioning creditor, to join in an involuntary petition subsequent to the filing of the involuntary petition "with the same effect as if such joining creditor were a petitioning creditor" runs counter to the Debtor's argument that § 303 is jurisdictional. 11 U.S.C. 303(c); *cf. In re Eastern Co.*, 136 B.R. 333 (Bankr.E.D.Mass.1992) (permitting creditors to join in petition after order for relief was entered).

### CONCLUSION

In conclusion, the Court finds that the claims of YMC, Prospec, K & B and the LAS Estate are not the subject of a bona fide dispute. The Court further concludes that the claims of YMC, Prospec, K & B and the LAS Estate aggregate at least $5,000.00

more than the value of any liens on property of the Debtor securing such claims. Finally, absent consideration of the Debtor's debts which are the subject of a bona fide dispute, the Court concludes that on the Petition Date the Debtor was not generally paying his debts as they became due.

In light of the foregoing, it is therefore

ORDERED that an order for relief under chapter 7 of title 11 of the United States Code be, and it hereby is, granted. It is further

ORDERED that David Zoll and Jennifer Hensal, attorneys for Debtor, file with the court within 15 days all documents required under Fed.R.Bankr.P. 1007, including a current budget, schedules and statement of affairs under chapter 7 and fee disclosure statement required under Fed.R.Bankr.P. 2016(b). It is further

ORDERED that the United States Trustee shall appoint an interim trustee pursuant to § 701(a) of title 11.